## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| DANIEL HOWARD, | ) | 3:19-CV-01071 (SVN) |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| FLAGSTAR BANK, | ) | |
| *Defendant*. | ) | April 20, 2022 |

### RULING AND ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Sarala V. Nagala, United States District Judge.

Plaintiff Daniel Howard brought this action against his former employer, Defendant Flagstar Bank, alleging a common law claim for wrongful discharge in violation of a clear mandate of public policy and an independent claim for punitive damages. *See generally* Am. Compl., ECF No. 25. Specifically, Plaintiff claims that Defendant violated the public policy expressed in the Connecticut Personnel Files Act, Conn. Gen. Stat. § 31-128e, by discharging Plaintiff after he contested what he perceived to be inaccurate information in his personnel file.

Defendant seeks summary judgment, contending that Plaintiff cannot establish a *prima facie* case for wrongful discharge and that, even if he can, Defendant had legitimate, permissible, non-pretextual reasons for terminating Plaintiff. Plaintiff disagrees, maintaining that there are genuine issues of material fact for the jury to resolve. For the following reasons, the Court DENIES Defendant's motion for summary judgment, as genuine issues of material fact remain for the jury to decide.

### I.    FACTUAL BACKGROUND

The parties agree on the following facts. Plaintiff worked for Flagstar as an at-will employee from about March of 2011 through January of 2019. Pl. Responses to Def. Rule 56(a)1 St., ECF No. 113, ¶¶ 1, 47. In January of 2013, Plaintiff became Flagstar's Vice President – East

Coast Regional Manager. *Id.* ¶ 1. In that role, Plaintiff supervised local branch managers, who in turn supervised loan officers. *Id.* ¶ 6. In 2016, Flagstar added a layer of management through the position of area manager, to whom branch managers began to report; Plaintiff, as regional manager, supervised the area managers. *Id.* ¶¶ 7–8.

In late 2017, Flagstar hired Kristy Fercho as its Executive Vice President, President of Mortgage. *Id.* ¶ 9. On December 19, 2018, Plaintiff was placed on a performance improvement plan ("PIP"). *Id.* ¶ 23. The PIP, which was scheduled to last forty-five days, noted two areas for improvement: "Growth and High Turnover" and "Leadership." *Id.* ¶ 24. As part of the PIP, Plaintiff was to have weekly meetings with Scott Bristol, whom Fercho had hired as Flagstar's National Sales Director in October of 2018. *Id.* ¶¶ 19, 25.

On January 13, 2019, Plaintiff emailed a letter to Bristol and Bethany Metzger, a member of Defendant's Human Resources staff. *Id.* ¶ 30. The letter stated, in part: "In accordance with the Connecticut Personnel Files Act, I am requesting that [the PIP] be rescinded and removed from any supervisory or other personnel file(s) that contain documents or other information that may be used in the future or referenced for my job performance with Flagstar Bank." *Id.*; *see* Ex. I to Mot., ECF No. 108-11 (hereinafter referred to as Plaintiff's "rebuttal"). The rebuttal further stated: "It seems more likely that you have already decided to terminate my employment, and this performance improvement plan is merely a tool intended to create the false impression of poor performance." Ex. I to Mot., ECF No. 108-11, at 3.

The weekly calls between Bristol and Plaintiff contemplated by the PIP generally did not occur. Pl. Responses to Def. Rule 56(a)1 St. ¶ 33. But one of Plaintiff's weekly calls with Bristol regarding his PIP was scheduled to take place on January 14, 2019, at 9:30 a.m. *Id.* ¶¶ 19, 34; *see* ECF No. 108-1 at 4–5, 10. This call had been scheduled since before Plaintiff submitted his

rebuttal to the PIP. Pl. Responses to Def. Rule 56(a)1 St. ¶ 35. Sometime on January 14, 2019, after Plaintiff submitted his rebuttal, the weekly call was rescheduled to take place at 5:00 p.m. with Fercho, rather than Bristol. *Id.* ¶ 36. During the call, Fercho stated that "she thought it was time to transition" Plaintiff. *Id.* ¶ 39. Fercho also stated that Defendant could "pay [Plaintiff] through the end of February," so Plaintiff could "hopefully find something different." *Id.* ¶ 40.

On January 15, 2019, Plaintiff's counsel sent a letter to Metzger discussing "Flagstar Bank's decision to terminate [Plaintiff's] employment." *Id.* ¶ 46; Ex. J to Mot., ECF No. 108-12, at 2. The letter indicated that, during Plaintiff's January 14, 2019, call with Fercho, Fercho had "told [Plaintiff] that Flagstar had decided to terminate his employment." Pl. Responses to Def. Rule 56(a)1 St. ¶ 46. On January 16, 2019, Metzger emailed Plaintiff and stated in part: "We are in receipt of the letter from your attorney and since you interpreted your discussion with Kristy [Fercho] on Monday as a termination, we are going to move forward with that action." *Id.* ¶ 47.

Plaintiff subsequently initiated this action by filing his original Complaint in July of 2019. ECF No. 1. In September of 2019, Defendant filed a motion to dismiss Plaintiff's Complaint. ECF No. 18. In response, Plaintiff filed his Amended Complaint, alleging claims for wrongful discharge and punitive damages. ECF No. 25. Defendant filed a second motion to dismiss in November of 2019. ECF No. 30. Following denial of Defendant's second motion to dismiss, ECF No. 56, the parties continued with discovery, which concluded in June of 2021. Defendant has now filed a motion seeking summary judgment on both counts of the Amended Complaint.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) provides, in relevant part, that a court "shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." With respect to materiality, a fact is

"material" only if a dispute over it "might affect the outcome of the suit under the governing law[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). With respect to genuineness, "summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In considering a motion for summary judgment, a court "must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Kee v. New York*, 12 F.4th 150, 158 (2d Cir. 2021) (citation and internal quotation marks omitted).

In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden of establishing there is no genuine issue of material fact in dispute will be satisfied if the movant can point to an absence of evidence to support an essential element of the non-moving party's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The movant bears an initial burden of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. However, a movant "need not prove a negative when it moves for summary judgment on an issue that the [non-movant] must prove at trial. It need only point to an absence of proof on [the non-movant's] part, and, at that point, [the non-movant] must 'designate specific facts showing that there is a genuine issue for trial.'" *Parker v. Sony Pictures Ent., Inc.*, 260 F.3d 100, 111 (2d Cir. 2001) (quoting *Celotex Corp.*, 477 U.S. at 324). The non-moving party, in order to defeat summary judgment, must come forward with evidence that would be sufficient to support a jury verdict in his or her favor. *Anderson*, 477 U.S. at 249. If the non-movant fails "to make a sufficient showing on an essential element of [their]

case with respect to which [they have] the burden of proof," then the movant will be entitled to judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 323.

## III. DISCUSSION

The parties do not dispute that Plaintiff filed a rebuttal to the PIP. Rather, the parties dispute whether the end of Plaintiff's employment with Defendant constituted a resignation or a termination and, if the latter, whether Defendant terminated Plaintiff because Plaintiff filed his rebuttal. The parties also disagree on two threshold issues: first, whether a wrongful discharge claim may rest on the public policy expressed in the Connecticut Personnel Files Act, Conn. Gen. Stat. § 31-128e; and second, whether the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), should apply to Plaintiff's wrongful discharge claim.[1] The Court addresses each issue below, taking the threshold issues first.

### A. Whether a Common Law Wrongful Discharge Claim May Rest on the Public Policy Expressed in Connecticut General Statutes § 31-128e

#### 1. *Legal Standard*

"In Connecticut, an employer and employee have an at-will employment relationship in the absence of a contract to the contrary." *Thibodeau v. Design Grp. One Architects, LLC*, 260 Conn. 691, 697 (2002). "Employment at will grants both parties the right to terminate the relationship for any reason, or no reason, at any time without fear of legal liability." *Id.* at 697–98. But Connecticut law has "carve[d] out" certain exceptions to the at-will doctrine, giving rise to tort claims for wrongful discharge. *Id.* at 698. In particular, state law recognizes that "public policy imposes some limits on the unbridled discretion to terminate the employment of someone hired at will." *Campbell v. Windham Cmty. Mem'l Hosp., Inc.*, 389 F. Supp. 2d 370, 380 (D. Conn.

---

[1] In addition, Defendant asserts that the Court should decline to consider Plaintiff's Local Rule 56(a)2 Statement because the Statement does not comply with the Local Rules and exceeds the relevant page limit. As these deficiencies do not affect this ruling, the Court does not address them.

2005). This public policy exception was recognized by the Connecticut Supreme Court in *Sheets v. Teddy's Frosted Foods, Inc.*, 179 Conn. 471, 476 (1980).

"[T]he public policy exception . . . carved out in *Sheets* attempts to balance the competing interests of employer and employee." *Morris v. Hartford Courant Co.*, 200 Conn. 676, 679 (1986). Specifically, "an employer is allowed, in ordinary circumstances, to make personnel decisions without fear of incurring civil liability," but "[e]mployee job security" is "protected against employer actions that contravene public policy." *Id.* "Under the exception, the employee has the burden of pleading and proving that his dismissal occurred for a reason violating public policy." *Id.* Accordingly, "a common-law cause of action for wrongful discharge exists 'if the former employee can prove a demonstrably improper reason for dismissal, a reason whose impropriety is derived from some important violation of public policy.'" *Sheets*, 179 Conn. at 475.

"The question of whether a challenged discharge violates public policy . . . is a question of law to be decided by the court." *Geysen v. Securitas Sec. Servs. USA, Inc.*, 322 Conn. 385, 407 (2016); *see also Campbell*, 389 F. Supp. 2d at 380 ("A court must determine . . . whether, as a matter of law, an employer's purported reason for terminating an employee violated some state policy."). The Connecticut Supreme Court has "repeatedly . . . underscored [its] adherence to the principle that the public policy exception to the general rule allowing unfettered termination of an at-will employment relationship is a narrow one." *Geysen*, 322 Conn. at 408. Consequently, the court has "rejected claims of wrongful discharge that have not been predicated upon an employer's violation of an important and clearly articulated public policy." *Id.* In evaluating claims, the court examines whether the plaintiff has alleged that his discharge violated any explicit statutory or constitutional provision or contravened any judicially conceived notion of public policy. *Thibodeau*, 260 Conn. at 699. The Connecticut Supreme Court recognized in *Sheets* that "when

there is a relevant state statute," the court "should not ignore the statement of public policy that it

represents." *Sheets*, 179 Conn. at 480.

Here, the relevant state statute, § 31-128e of the Connecticut Personnel Files Act, provides:

**Removal or correction of information. Employee's explanatory statement.**

(a) If, upon inspection of his or her personnel file or medical records, an employee disagrees with any of the information contained in such file or records, removal or correction of such information may be agreed upon by such employee and his or her employer. If such employee and employer cannot agree upon such removal or correction then such employee may submit a written statement explaining his or her position. Such statement shall be maintained as part of such employee's personnel file or medical records and shall accompany any transmittal or disclosure from such file or records made to a third party.

(b) Each employer shall include a statement in clear and conspicuous language in any documented disciplinary action, notice of termination of such employee's employment or performance evaluation that the employee may, should the employee disagree with any of the information contained in such documented disciplinary action, notice of termination or performance evaluation, submit a written statement explaining his or her position. Such employee statement shall be maintained as part of such employee's personnel file and shall accompany any transmittal or disclosure from such file or records made to a third party.

Conn. Gen. Stat. § 31-128e.

The Connecticut Supreme Court has never expressly held that the public policy expressed

in § 31-128e constitutes an important public policy for purposes of a wrongful discharge claim.

Although the parties have not asked the Court to do so, the Court has considered the merits of

certifying this question to the Connecticut Supreme Court. However, because the Court can

reasonably predict how the Connecticut Supreme Court would rule on this issue, certification is

not necessary here.

"In deciding matters of state law," a federal court seeks to "predict how the state's highest

court would resolve" the issue the federal court has identified. *Schwab Short-Term Bond Mkt.*

*Fund v. Lloyds Banking Grp. PLC*, 22 F.4th 103, 120 (2d Cir. 2021), *petition for certiorari filed*,

No. 21-1237 (U.S. Mar. 11, 2022). "Toward that end, [courts] consider the highest court's decisions in related cases, as well as relevant decisions of the state's lower courts and of other jurisdictions." *Khan v. Yale Univ.*, 27 F.4th 805, 818 (2d Cir. 2022).

The Second Circuit has explained that "[p]rincipally, we consider the language of the state intermediate appellate courts to be helpful indicators of how the state's highest court would rule." *DiBella v. Hopkins*, 403 F.3d 102, 112 (2d Cir. 2005). The court further explained that "[a]lthough we are not strictly bound by state intermediate appellate courts, rulings from such courts are a basis for 'ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise.'" *Id.* The Second Circuit also "look[s] to the language of other jurisdictions on the same issue and other sources the state's highest court might rely upon in deciding the question, including scholarly writings." *Id.*

Only where state law "is so uncertain" that the Court could make "no reasonable prediction" should the question be certified to the state Supreme Court "for a definitive resolution." *Id.* at 111. Thus, "[c]ertification is appropriate only in those cases where there is a split of authority on the issue, where a statute's plain language does not indicate the answer, or when presented with a complex question of common law for which no [state] authority can be found." *Tantaros v. Fox News Network*, 12 F.4th 135, 142 n.24 (2d Cir. 2021).

2. *Discussion*

For the reasons below, the Court can reasonably predict that the Connecticut Supreme Court would find that the public policy expressed in § 31-128e of the Connecticut Personnel Files Act constitutes a clearly articulated, important public policy for purposes of a wrongful discharge claim.

The Court begins by noting that three courts in this district have already found that the public policy expressed in § 31-128e can provide the basis for a common law wrongful discharge claim, including in this very matter. First, in *Campbell*, 389 F. Supp. 2d at 380 (Hall, J.), the plaintiff asserted a *Sheets* claim, alleging that "her termination was based, in part, on the fact that she submitted a written document disputing various factual statements included in her mid-probationary period evaluation." The court acknowledged that "[i]n order to prevail on this claim, [the plaintiff] must prove that the defendants' reason for requiring her resignation violated a public policy expressed by Connecticut General Statute § 31–128e," which "clearly creates the right of an employee to dispute the accuracy of statements in her personnel file, both by bringing such factual disputes to her employer's attention and, if necessary, supplementing her personnel file with written documentation of her disagreements with statements made in the file." *Id.* at 381. The court concluded that "[a] discharge premised on the simple fact that an employee 'disagrees with any of [the] information contained in' her personnel file and brings this disagreement to the attention of her employer violates the public policy expressed by Connecticut General Statute § 31–128e." *Id.* Similarly, in *Herbert v. National Amusements, Inc.*, 833 F. Supp. 2d 192 (D. Conn. 2011) (Bryant, J.), the court cited *Campbell* when declining to accept the defendant's arguments that the plaintiff had "failed to articulate an important public policy" and that "§ 31–128e does not reflect a general public policy concern warranting an exception to the at-will employment rule." *Id.* at 203–04. Finally, in denying Defendant's motion to dismiss in the instant case, Judge Squatrito discussed both *Campbell* and *Herbert* and concluded that a termination based on the fact that an employee disagrees with information contained in his personnel file or submits a written

statement explaining his position violates the public policy expressed by § 31-128e.  *See* ECF No. 56.[2]

*Campbell*, *Herbert*, and Judge Squatrito's earlier decision in this case provide strong persuasive authority for the proposition that § 31-128e expresses an important public policy.  In fact, the Connecticut Superior Court has cited *Campbell* in noting that "a cause of action for wrongful dismissal may be predicated upon a violation of the public policy in §§ 31-128a, et seq." *Fecteau v. E. Coast Lightning*, No. LLICV075002853S, 2008 WL 2502862, at *2 (Conn. Super. Ct. June 10, 2008).  The state court's decision in *Fecteau* thus provides persuasive authority, on its own, in favor of predicting that the Connecticut Supreme Court would find that a wrongful discharge claim may be predicated on the public policy expressed in § 31-128e.  *See Khan*, 27 F.4th at 818 (in predicting how a state's highest court will rule, the Second Circuit "consider[s] . . . relevant decisions of the state's lower courts").

Turning to the text of § 31-128e itself, the Court predicts that the Connecticut Supreme Court would find that the statute clearly articulates the public policy that an employee has the right to dispute the accuracy of information in the employee's personnel file.  *See Thibodeau*, 260 Conn. at 701 (recognizing requirement that the public policy at issue be "important and clearly articulated").  The Connecticut Supreme Court has recognized that "*Sheets* and its progeny refer generally to violations of public policy as expressed in *explicit* statutory or constitutional provisions, or judicial decisions."  *Faulkner v. United Techs. Corp., Sikorsky Aircraft Div.*, 240 Conn. 576, 585 (1997) (emphasis added).  Here, § 31-128e represents an explicit public policy mandate, and Defendant does not challenge that the policy it expresses is clearly articulated.

---

[2] As the Court independently reaches the same conclusion as Judge Squatrito based on a prediction of how the Connecticut Supreme Court would rule, it need not address Plaintiff's argument that the law of the case doctrine should dictate the outcome here.

In addition to finding that the public policy set forth in § 31-128e is clearly articulated, the Court predicts that the Connecticut Supreme Court would find that the public policy established by § 31-128e is important, as required for a *Sheets* claim. First, the statutory basis of the public policy weighs in favor of that public policy's importance. The Connecticut legislature deemed an employee's opportunity to rebut information in the employee's personnel file significant enough to protect through statute. Plaintiff also convincingly argues that the filing of a rebuttal under § 31-128e affects not only the individual employee, but also the balance of employer-employee relations as a whole. For instance, because personnel files can be transferred amongst employers, the content of the files can also impact employee mobility within the labor force. It appears to the Court that § 31-128e's import goes beyond the mere ability to put a piece of paper in a personnel file, as Defendant argues; instead, it is clear that the legislature intended for the employee to have a voice in matters that appear in her personnel file at her current employer and potentially beyond.

The legislative history of the Connecticut Personnel Files Act also supports the Court's conclusion that § 31-128e expresses an important public policy.[3] In 1980, during debate on the act that contained what ultimately became § 31-128e, a member of the Connecticut House of Representatives described the act as "probably a landmark in this State as far as personnel files." Conn. Gen. Assembly House Proceedings, vol. 23, pt. 3, at 831 (1980). In 2013, the state legislature bolstered the public policy mandate of § 31-128e by adding subsection (b), which requires employers to state "in clear and conspicuous language" in any documented disciplinary action, notice of termination, or performance evaluation that an employee has the right to file a

---

[3] The Court looks to the legislative history of the statute solely for the purpose of determining the importance of the public policy expressed in § 31-128e. *See Chenarides v. Bestfoods Baking*, No. CV030197877S, 2005 WL 1088983, at *4 (Conn. Super. Ct. Mar. 30, 2005) (looking to legislative history to determine "[w]hether the public policy embodied in § 33-1336 validly supports a wrongful discharge action in a case of internal whistleblowing within the context of a privately held corporation"). The Court is not examining the legislative history for the purpose of determining the meaning of § 31-128e or to resolve any ambiguities therein.

rebuttal.  *See* P.A. 13-176 § 2.  The fact that the legislature added the notice provision of subsection (b) in 2013 demonstrates that the right of rebuttal was important enough to ensure that employees knew about it.  Thus, examination of the legislative history buttresses the conclusion that the public policy expressed in § 31-128e is important.

Additionally, the Court finds as persuasive recent authority from the Supreme Judicial Court of Massachusetts,[4] which held that the Massachusetts legislature's codification of an employee's "statutory right of rebuttal" gave rise to a claim under Massachusetts's public policy exception to at-will employment.  *See Meehan v. Med. Info. Tech., Inc.*, 177 N.E.3d 917, 922 (Mass. 2021).  In *Meehan*, as here, the plaintiff claimed that he was terminated after submitting a rebuttal to a PIP.  *Id.* at 919–20.  The Supreme Judicial Court held that "the statutory right of rebuttal provided [by Massachusetts state statute], is a legally guaranteed right of employment, and therefore, termination from employment for the exercise of this legally guaranteed right fits within the . . . public policy exception to employment at will defined by our case law."  *Id.* at 922.  The court further explained:  "When addressing the discharge of an employee for the exercise of an employment right defined by statute, we do not . . . decide whether the right is important or relates only to internal matters.  In enacting the statutory employment right, the Legislature has already made both determinations, concluding that the right is a matter of public significance."  *Id.*  Thus, the court concluded that "[t]ermination of an at-will employee simply for filing a rebuttal expressly authorized by [Massachusetts state statute], constitutes a wrongful discharge in violation

---

[4] As noted, under Second Circuit precedent, the Court may "consider . . . relevant decisions . . . of other jurisdictions" when predicting how a state's highest court would rule on an issue.  *Khan*, 27 F.4th at 818; *see DiBella*, 403 F.3d at 112 ("We also look to the language of other jurisdictions on the same issue and other sources the state's highest court might rely upon in deciding the question . . . .").  Indeed, the Connecticut Superior Court has looked specifically to Massachusetts precedent for guidance with respect to *Sheets* claims.  *See O'Brien v. Stolt-Nielsen Transp. Grp. Ltd.*, 838 A.2d 1076, 1082 (Conn. Super. Ct. 2003) (considering a Massachusetts case "as background" when discussing a *Sheets* claim).

of public policy." *Id.* at 925. Accordingly, *Meehan* provides persuasive authority for the proposition that the right of rebuttal is an important public policy in Connecticut.[5]

Defendant contends that Plaintiff's *Sheets* claim is not cognizable because Plaintiff's rebuttal was motivated by personal interest, rather than public concern, and so Plaintiff was not acting as a "good citizen" when he filed his rebuttal. *See Sheets*, 179 Conn. at 477 ("We are . . . mindful that the myriad of employees without the bargaining power to command employment contracts for a definite term are entitled to a modicum of judicial protection when their conduct as good citizens is punished by their employers."). Defendant posits that "[w]here courts have found a narrow exception to the at-will doctrine, the plaintiff acted 'as a citizen upon matters of public concern' and not 'as an employee upon matters only of personal interest.'" ECF No. 108-1 at 16 (quoting, in part, *Campbell*, 389 F. Supp. 2d at 382).

At the outset, Defendant's citation to *Campbell* is misplaced. The text Defendant quotes is not from *Campbell*'s discussion of whether the plaintiff's § 31-128e-based *Sheets* claim should survive summary judgment. Rather, it is from the court's discussion of the free speech protection afforded by a different state statute, Connecticut General Statutes § 31-51q. *See Campbell*, 389 F. Supp. 2d at 382 (noting that, for purposes of § 31-51q, the court must consider whether the plaintiff spoke as a citizen upon matters of public concern or instead as an employee upon matters only of personal interest). Moreover, Defendant cites no authority expressly holding that a *Sheets* claim is not cognizable where a plaintiff has engaged in protected activity for the plaintiff's personal benefit. In fact, this assertion is contradicted by the reasoning of *Sheets* itself, which identified

---

[5] This Court does not hold, as *Meehan* did, that codification of a public policy in a statute necessarily means the public policy of the statute is important. Although codification of a policy in a statute is suggestive of the policy's importance, the Connecticut Supreme Court has not, unlike the Massachusetts Supreme Judicial Court, used codification in a statute as a proxy for determining whether a public policy is important. *Cf. Meehan*, 177 N.E.3d at 922 (discussing that consideration of the importance of a policy is required primarily when Massachusetts courts "are seeking to identify a public policy that has not been already recognized in the law").

termination in retaliation for the filing of a worker's compensation claim as actionable. The filing of a worker's compensation claim benefits an individual personally, at least in part. And, as discussed above, Plaintiff noted that an employee's ability to file a rebuttal has broader implications beyond the individual employee's own personal situation. In the absence of convincing authority to the contrary, the Court will decline to infer that a plaintiff asserting a *Sheets* claim must be motivated by something other than personal interest when exercising his rights.

For these reasons, the Court predicts that the Connecticut Supreme Court would find that the explicit mandates of § 31-128e clearly articulate an important public policy that can serve as the basis for a common law wrongful discharge claim under *Sheets*. As a result, the Court will consider whether Defendant is entitled to summary judgment on the merits of Plaintiff's claim.

B. Whether the *McDonnell Douglas* Framework Applies to Plaintiff's Wrongful Discharge Claim

In *McDonnell Douglas*, the U.S. Supreme Court "set forth the basic allocation of burdens and order of presentation of proof in a Title VII case alleging discriminatory treatment" by an employer. *Tex. Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 252 (1981). The *McDonnell Douglas* framework has been utilized in other employment contexts beyond Title VII. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000). A court's analysis of a wrongful discharge action under a state statute or common law typically follows the *McDonnell Douglas* framework. *See Li v. Canberra Indus.*, 134 Conn. App. 448, 454 (2012).

Plaintiff argues, however, that the *McDonnell Douglas* burden-shifting framework does not apply to *Sheets* claims. Although Plaintiff is correct that the Connecticut Supreme Court has not explicitly applied the *McDonnell Douglas* framework to *Sheets* claims, the Connecticut Appellate Court has. *See Zweig*, 203 Conn. App. at 841; *Li*, 134 Conn. App. at 455. Citing *Li*, another court in this district has also concluded that "[c]ommon law wrongful discharge claims are

analyzed under the burden-shifting framework set out by *McDonnell Douglas Corp. v. Green*." *Learning Care Grp., Inc. v. Armetta*, No. 3:13-CV-1540 (VAB), 2016 WL 953212, at *7 (D. Conn. Mar. 11, 2016) (citation omitted).

Plaintiff has not presented authority to suggest that the Connecticut Supreme Court would not apply the *McDonnell Douglas* framework to *Sheets* claims.[6] Accordingly, the Court will apply the *McDonnell Douglas* framework to Plaintiff's wrongful discharge claim.[7]

### C. Whether Defendant Is Entitled to Summary Judgment on Count One

#### 1. *Legal Standard*

Under the *McDonnell Douglas* framework, the plaintiff has the initial burden of "proving by the preponderance of the evidence a *prima facie* case of [wrongful termination]." *See Burdine*, 450 U.S. at 253; *Dister v. Cont'l Grp., Inc.*, 859 F.2d 1108, 1111–12 (2d Cir. 1988); *Gannon v. United Parcel Serv.*, 529 F. App'x 102, 103 (2d Cir. 2013). To demonstrate a *prima facie* case of wrongful discharge, the plaintiff must "show[] that he or she engaged in a protected activity or otherwise fell within the protection of the statute, that he or she was subsequently discharged, and that there was a causal connection between the two." *Zweig*, 203 Conn. App. at 841. The

---

[6] If there was an absence of authority from Connecticut state courts on whether the *McDonnell Douglas* framework applies to *Sheets* claims, the Court would be presented with the question of whether the framework is substantive or procedural under the *Erie* doctrine. *See Gasperini v. Ctr. for Hums., Inc.*, 518 U.S. 415, 427 (1996) ("Under the *Erie* doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law."); *Theriault v. Genesis HealthCare LLC*, 890 F.3d 342, 346 (1st Cir. 2018). This question is not at issue here, given the Connecticut Appellate Court's decisions in *Zweig* and *Li*.

[7] The fact that, before the case was transferred to the undersigned, the Court ruled on Defendant's motion to dismiss without mentioning the *McDonnell Douglas* framework does not preclude the Court from applying the framework now. To start, Plaintiff does not articulate any specific ways in which applying the *McConnell Douglas* standard now would conflict with the Court's previous ruling. Indeed, the Court's previous ruling dealt specifically with whether Plaintiff engaged in a protected activity and issues related to the cause of Plaintiff's termination. Such issues speak directly to the requirements of alleging a *prima facie* case under *McConnell Douglas*. In addition, at the pleadings stage, "the Court does not . . . apply the *McDonnell Douglas* burden shifting test," and "[a] plaintiff is required only to allege facts to afford 'plausible support' for the 'reduced requirements' of the *prima facie* case." *Skates v. Inc. Vill. of Freeport*, No. CV151136SJFAYS, 2016 WL 1459659, at *7 (E.D.N.Y. Jan. 28, 2016), *report and recommendation adopted*, No. 15CV1136SJFAYS, 2016 WL 1452391 (E.D.N.Y. Apr. 12, 2016). Accordingly, nothing in the Court's previous ruling precludes the Court from applying *McDonnell Douglas* with respect to Defendant's pending motion.

plaintiff's burden of establishing a *prima facie* case is "minimal." *Carlton v. Mystic Transp., Inc.*, 202 F.3d 129, 134 (2d Cir. 2000); *Zweig*, 203 Conn. App. at 841. "A plaintiff satisfies this burden if he or she introduces evidence that raises a reasonable inference that the action taken by the employer was based on an impermissible factor." *Holcomb v. Iona Coll.*, 521 F.3d 130, 138 (2d Cir. 2008).

If the plaintiff meets the initial burden of establishing a *prima facie* case, the evidentiary burden shifts to the employer to "demonstrate a permissible reason for the termination of employment." *Armetta*, 2016 WL 953212, at *7. If the defendant meets its burden of production, "[t]he burden then shifts back to the plaintiff to show that the employer's reason is 'pretextual or, even if true, the improper reason likely motivated the employer in the decision to terminate.'" *Id.* at *7. "A legitimate reason is pretextual if the improper motive, in this case a desire to violate Connecticut's public policy, was the real reason the plaintiff was terminated." *Id.* "[A] trial court should exercise caution" when considering whether to grant summary judgment to an employer where the employer's intent is a genuine factual issue. *Carlton*, 202 F.3d at 134. Moreover, while the intermediate evidentiary burdens may shift between the plaintiff and the defendant, the ultimate burden of *proof*, i.e., persuading the trier of fact that a wrongful discharge occurred, remains at all times with the plaintiff. *Reeves*, 530 U.S. at 143.

## 2. *Discussion*

### a. *Plaintiff's* Prima Facie *Case of Wrongful Discharge*

Defendant first argues that it should be granted summary judgment because Plaintiff has failed to establish a *prima facie* case of wrongful discharge. The Court disagrees. Plaintiff has demonstrated that there are genuine issues of material fact with respect to whether he was terminated or resigned from his employment and whether the end of his employment was caused

by his submission of the rebuttal. These genuine disputes of material fact preclude the issuance of summary judgment at the *prima facie* stage of the Court's *McDonnell Douglas* analysis.

To review, the elements of Plaintiff's *prima facie* case are: (1) Plaintiff engaged in a protected activity; (2) Plaintiff was discharged; and (3) there was a causal connection between the protected activity and the discharge. *Zweig*, 203 Conn. App. at 841. First, it is undisputed that Plaintiff filed a rebuttal to his PIP, pursuant to § 31-128e, on January 13, 2019. As noted above, the Court has held that § 31-128e expresses an important public policy, for purposes of this *Sheets* claim. Thus, Plaintiff engaged in an activity that fell within the protection of § 31-128e.

Next, Plaintiff has provided sufficient evidence to raise a genuine issue of material fact about whether he was subsequently discharged. "Normally, an employee who resigns is not regarded as having been discharged, and thus would have no right of action for abusive discharge." *Brittell v. Dep't of Corr.*, 247 Conn. 148, 178 (1998). As a result, if Plaintiff voluntarily resigned, his *Sheets* claim cannot survive. But here—drawing all reasonable inferences in favor of Plaintiff, as the Court is required to do on a motion for summary judgment—the Court cannot find as a matter of law that Plaintiff voluntarily resigned from his employment with Defendant, as Defendant argues. Plaintiff testified that, during his January 14, 2019, call with Kristy Fercho, Fercho stated that "she thought it was time to transition [Plaintiff]." Pl. Responses to Def. Rule 56(a)1 St. ¶¶ 30, 36–37, 39. Plaintiff further testified that Fercho stated: "[W]e can pay you through the end of February so you can hopefully find something different . . . ." *Id.* ¶ 40. Then, after Plaintiff's attorney sent a letter to Bethany Metzger discussing Defendant's "decision to terminate [Plaintiff's] employment," *id.* ¶ 46, Metzger emailed Plaintiff and stated, in part: "We are in receipt of the letter from your attorney and since you interpreted your discussion with Kristy [Fercho] on Monday as a termination, we are going to move forward with that action," *id.* ¶ 47.

The email attached a document titled "Involuntary Separation Process & Information." Ex. K to Mot., ECF No. 108-13, at 3–9. Defendant thereafter marked Plaintiff's termination as "Involuntary > Poor Job Performance." Ex. L to Mot., ECF No. 108-14, at 2.

This sequence of events would permit a reasonable jury to find that Defendant terminated Plaintiff. First, a reasonable jury might find that Fercho's statements during the January 14, 2019, call or that Metzger's statements in the January 16, 2019, email to Plaintiff constituted a termination. Notably, Metzger indicated that *Defendant* was "going to move forward with" Plaintiff's termination and attached to her email materials regarding "Involuntary Separation." Moreover, Defendant's own records indicate that Plaintiff's termination was "involuntary" and the result of "poor job performance." These are indicators of termination, not voluntary resignation.

The Court is unpersuaded by Defendant's counterarguments. Defendant asserts it merely accepted Plaintiff's conclusion that he was terminated and processed his termination. But a reasonable jury could determine that, if Defendant did not intend to discharge Plaintiff, it would have corrected Plaintiff's mistaken understanding that he had been terminated. Indeed, Defendant's acceptance of Plaintiff's conclusion that he had been terminated could reasonably be viewed as essentially *conceding* that Defendant terminated Plaintiff. Defendant also argues that it did not terminate Plaintiff because he continued to work after the January 14, 2019, call. The Court is not convinced that an employee has been involuntarily discharged only if their employment ends immediately upon notice of their termination. As a result, the fact that Plaintiff continued to work after his January 14, 2019, conversation with Fercho is not dispositive. Moreover, even accepting Defendant's argument that Plaintiff could not have been terminated if he continued to show up for work, this would only demonstrate that Plaintiff was not terminated *on January 14, 2019*. It would have no bearing on whether the termination occurred on January

16, 2019, when Metzger emailed Plaintiff the letter noting that Defendant was "going to move forward with" Plaintiff's termination.

Finally, Plaintiff has raised genuine issues of material fact regarding the third element of his *prima facie* case, specifically, whether the end of his employment was caused by his filing of the rebuttal to his PIP. "A common-law action brought pursuant to *Sheets* includes a causation element," and "[a] failure to prove causation defeats the action." *Li*, 134 Conn. App. at 455. In determining whether the causation element is met, "[a] fact finder may consider the temporal proximity between the plaintiff's [protected activity] and her discharge." *Id.* at 448; *cf. Zweig*, 203 Conn. App. at 844 n.17 ("As the United States Court of Appeals for the Second Circuit has explained, '[t]he causal connection needed for proof of a retaliation claim can be established indirectly by showing that the protected activity was closely followed in time by the adverse action.'" (alteration in original)).

A reasonable jury could find a causal connection between Plaintiff's protected activity and his discharge. Most notably, the parties agree that before Plaintiff filed his rebuttal, he was scheduled to discuss his PIP with Scott Bristol on the morning of January 14, 2019. Then, almost immediately after Plaintiff submitted his January 13, 2019, rebuttal to Bristol and Metzger via email, his morning call with Bristol regarding the PIP was changed to an evening call with Fercho regarding the end of Plaintiff's employment with Defendant. Defendant does not identify any event other than the submission of the rebuttal that precipitated this change. As a result, a reasonable jury could find that Defendant terminated Plaintiff because he filed his rebuttal.

Additionally, Plaintiff's discharge took place, at most, three days after he filed his rebuttal. Indeed, if a jury were to find that Plaintiff's discharge took place during his January 14, 2019, call with Fercho, then Plaintiff's discharge took place only one day after he engaged in protected

activity. A reasonable jury might find that this close temporal proximity raises the reasonable inference that Plaintiff's rebuttal and his termination were causally linked. *See Li*, 134 Conn. App. at 457 ("Termination within several months of the time the allegedly protected activity occurred may be sufficient to create an inference of causation.").

Defendant argues that mere temporal proximity, without more, is not enough to establish a causal connection. However, this argument contradicts the Connecticut Appellate Court's reasoning regarding temporal proximity in *Li*, 134 Conn. App. at 457, and *Zweig*, 203 Conn. App. at 844 n.17. Indeed, Defendant's argument contradicts various cases on which Defendant itself relies, which hold that close temporal proximity can be sufficient to establish causation when the proximity is quite close. *See Smith v. Da Ros*, 777 F. Supp. 2d 340, 357 (D. Conn. 2011) ("[M]ere temporal proximity—even very close temporal proximity—is not *always* sufficient to support an inference that the plaintiff's protected activity was a motivating factor in the defendant's adverse employment action." (emphasis added)); *see also id.* at 356 ("[A]s the Supreme Court has observed, the cases that accept mere temporal proximity . . . as sufficient evidence of causality to establish a *prima facie* case of unlawful retaliation uniformly hold that the temporal proximity must be very close." (internal punctuation omitted) (second alteration in original)).

In any event, Plaintiff does not rely solely on temporal proximity to support causation. Rather, Plaintiff also relies on how the nature of the January 14, 2019, call changed the morning after he submitted his rebuttal. A reasonable jury could infer that, before Plaintiff submitted his rebuttal, the January 14, 2019, call was one of the pre-planned check-in calls between Plaintiff and Bristol concerning his PIP. Similarly, a jury could infer that there was a connection between the submission of the rebuttal and the changes made by Defendant to several aspects of the call, including the time, the participants, and the topic (which ultimately included Plaintiff's transition

from Flagstar).  These changing circumstances present additional evidence of causation beyond the temporal proximity between Plaintiff's rebuttal and the end of his employment for Defendant. This is particularly true in light of the fact that the PIP was not scheduled to end for several more days when Plaintiff's employment for Defendant ended.  Thus, even if the Court were to accept Defendant's argument that mere temporal proximity is not enough, summary judgment would still not be warranted.

Defendant further contends that Flagstar was not happy with Plaintiff's performance, which would suggest that Defendant terminated him due to poor performance and not in reaction to Plaintiff's rebuttal.  For example, Defendant notes that Plaintiff himself acknowledged that he expected to be terminated as early as July of 2018.  ECF No. 108-1 at 19–21.  As Plaintiff points out, however, both Bristol and Metzger testified that they did not intend to fire Plaintiff at the time they issued the PIP and that, if Plaintiff had satisfactorily completed the PIP, his employment would have continued.  ECF No. 112 at 25; ECF No. 112-1 ¶ 47.[8]  Given this evidence, a reasonable jury could find that Defendant intended to retain Plaintiff before he submitted his rebuttal, and that the rebuttal played a role in his discharge.

Finally, Defendant argues that Plaintiff's wrongful discharge claim cannot succeed because Plaintiff cannot prove that the rebuttal was the *sole* reason for the end of his employment. Defendant cites *Herbert*, in which the court interpreted *Campbell* as "suggest[ing] that there would be violation of public policy only if the termination was based solely on the fact that Plaintiff submitted a reply as opposed to the content of that reply."  *Herbert*, 833 F. Supp. 2d at 203.  In

---

[8] *See* Bristol Depo., ECF No. 112-6, at 2–3 ("Q. Did you intend to fire Dan Howard regardless of whether he satisfactorily completed the performance improvement plan? A. No. Q. Did you intend this performance improvement plan that you gave Dan to give him a fair chance to succeed? A. Yes."); Metzger Depo., ECF No. 112-3, at 23 ("Q. Before the PIP, to your memory, did Scott Bristol ever say he was using the PIP as a way to get rid of Dan Howard? A. He did not say that to me.").

*Herbert*, the court ultimately granted summary judgment because the plaintiff's termination "was not solely based on his . . . reply memo." *Id.* at 204. Specifically, the plaintiff in *Herbert* had "routinely submitted rebuttal and reply memos [on prior occasions] and was not disciplined or terminated on the basis of those memos," and had alleged age discrimination as a separate reason for his termination. *Id.* Therefore, Judge Bryant reasoned that the plaintiff acknowledged that his termination "did not result from the 'simple fact'" that he had filed a rebuttal. *Id.*

There appears to be a split among courts in this district as to whether Plaintiff must prove that the filing of the rebuttal was the sole cause for discharge from employment. Although *Herbert* appears to have held as much, *Campbell* expressly allowed a *Sheets* claim to survive summary judgment when the plaintiff alleged the termination was based on gender discrimination, religious discrimination, and "*in part*, on the fact that [the plaintiff] submitted a written document disputing various factual statements included in her mid-probationary period evaluation." *Campbell*, 389 F. Supp. 2d at 380 (emphasis added).

Defendant cites no case in which a Connecticut state court has held that the causation element of a *Sheets* claim is only satisfied where the protected activity is the sole cause of the plaintiff's termination. Indeed, the Connecticut Appellate Court's opinion in *Li* suggests the opposite. In *Li*, the Appellate Court held that the trial court erred in granting summary judgment to an employer when the employee asserted that she was terminated for what she called "whistle-blowing." 134 Conn. App. at 453, 457. The Court noted: "[a]lthough there surely was evidence of perfectly permissible reasons for the plaintiff's discharge as well, a genuine issue of fact nonetheless existed" with respect to whether the plaintiff's "whistle-blowing" activity was the cause of her termination. *Id.* at 457. Thus, *Li* supports the view that, even if there may be more

than one reason for discharge, a plaintiff can still avoid summary judgment if the protected activity was *one* of multiple potential reasons for the plaintiff's discharge.

In light of *Li*, the Court finds that *Campbell*, rather than *Herbert*, provides a more tenable construction of Connecticut law. The Court refrains from finding that Plaintiff may only sustain his *prima facie* case if the filing of his rebuttal was the sole cause for the termination. As Judge Squatrito noted in his earlier decision in this matter, it is "up to the finder of fact to decide what role the plaintiff's rebuttal played in the defendant's decision to terminate his employment." ECF No. 56 at 12. Defendant fails to offer sufficient justification for the Court to depart from its previous ruling, especially considering that the Court addressed *Herbert* in that ruling, or to depart from the guidance provided by *Li* and *Campbell*.

In sum, Plaintiff has raised genuine issues of material fact regarding his *prima facie* case of wrongful discharge.[9]

    *b.*    *Legitimate Reason for Plaintiff's Termination*

Defendant next argues that, even if Plaintiff withstands summary judgment with respect to his *prima facie* case, it is entitled to summary judgment on the second and third steps of the *McDonnell Douglas* framework. Specifically, Defendant claims that, even if Plaintiff can show that his employment was in fact terminated, it was terminated for a legitimate reason and Plaintiff cannot show that this reason was pretextual. The Court will thus consider the remaining steps in the *McDonnell Douglas* burden-shifting framework to determine whether Defendant is entitled to summary judgment on Count One. *See Lopez v. S.B. Thomas, Inc.*, 831 F.2d 1184, 1189 (2d Cir. 1987), *overruled on other grounds by Patterson v. McLean Credit Union*, 491 U.S. 164 (1989)

---

[9] While *Burdine* describes a plaintiff's burden on his *prima facie* case as "minimal" and "not onerous," it also states the plaintiff must prove the *prima facie* case by a preponderance of the evidence. 450 U.S. at 253. Any distinction between these standards is not germane here, as the Court finds that Plaintiff has shown genuine issues of material fact even under a preponderance of the evidence standard.

(finding genuine issues of material fact as to *prima facie* case *and* whether there was discrimination); *Primmer v. CBS Studios, Inc.*, 667 F. Supp. 2d 248, 259–61 (S.D.N.Y. 2009) (same); *Rajcoomar v. TJX Cos., Inc.*, 319 F. Supp. 2d 430, 434, 437 (S.D.N.Y. 2004) ("Having determined that the Plaintiffs have alleged sufficient material facts that are in genuine dispute [in the *prima facie* case], . . . a *prima facie* case exists for the purposes of this motion. The next analysis is whether the Defendant has proffered a legitimate, non-discriminatory reason for the terminations.") (italics added).

At the second step of the *McDonnell Douglas* framework, the burden shifts to Defendant to produce evidence that there was a legitimate reason for Plaintiff's termination. *Burdine*, 450 U.S. at 254; *Shah v. MTA N.Y.C. Transit*, 687 F. App'x 32, 33 (2d Cir. 2017). If Defendant carries this burden of production, the presumption raised by the *prima facie* case is rebutted and, in the third step of the *McDonnell Douglas* framework, the burden returns to Plaintiff to demonstrate that "the proffered reason was not the true reason for the employment decision." *Burdine*, 450 U.S. at 256; *Kovaco v. Rockbestos-Surprenant Cable Corp.*, 834 F.3d 128, 136 (2d Cir. 2016). "Summary judgment is appropriate at this point [of the *McDonnell Douglas* framework] only if the employer's" proffered legitimate reason "is dispositive and forecloses any issue of material fact." *Carlton*, 202 F.3d at 135.

The Court finds that Defendant has proffered possible permissible reasons for terminating Plaintiff under the second step, but that genuine issues of material fact exist regarding whether these reasons are pretextual under the third step, as described further below. Such genuine issues of material fact preclude issuance of summary judgment. The primary reasons proffered by Defendant are: (1) it was eliminating a redundant layer of management; and (2) Plaintiff had performance issues. Defendant's evidence establishes that, after Fercho was hired as Executive

Vice President, President of Mortgage, she began taking measures to decrease costs, including instituting compensation plan changes, exiting certain branches, and implementing a hiring freeze. ECF No. 108-2 ¶¶ 10–12. Defendant also points to Plaintiff's own deposition testimony in which he acknowledged his belief that "there were layoffs coming," *id.* ¶ 15, and to a number of text messages sent by Plaintiff that Defendants argue suggest Plaintiff knew his employment at Flagstar may have been coming to an end, Pl. Responses to Def. Rule 56(a)1 St. ¶¶ 18, 20–22. Finally, Defendant's records indicate that Plaintiff was involuntarily terminated due to "poor job performance." Ex. L to Mot., ECF No. 108-14, at 2.

This evidence is sufficient to rebut any presumption created by Plaintiff's *prima facie* case, thus shifting the burden back to Plaintiff to establish that the proffered reasons are merely pretext for the alleged true reason, Plaintiff's filing of a rebuttal to his PIP. Ultimately, the Court finds that questions remain as to whether Defendant's proffered reasons were the true reasons for Plaintiff's discharge, as discussed below.

### c. Pretext

As explained above, at the final stage of the *McDonnell Douglas* analysis, the burden shifts back to Plaintiff to establish that the employer's proffered reason for the discharge is pretextual. *Dister*, 859 F.2d at 1112; *Shah*, 687 F. App'x at 33. Because Defendant has produced evidence that it acted for a legitimate reason, Plaintiff "may no longer rely on the presumption of [wrongful discharge] raised by the *prima facie* case." *Holcomb*, 521 F.3d at 141. At this stage, the court must "examine the entire record to determine if [a] plaintiff[] meet[s] [his] ultimate burden" of establishing that he was wrongfully discharged in violation of an important public policy. *Lizardo v. Denny's, Inc.*, 270 F.3d 94, 103 (2d Cir. 2001). "Whether judgment as a matter of law is appropriate in any particular case will depend on a number of factors. Those include the strength

of the plaintiff's *prima facie* case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered on a motion for judgment as a matter of law." *Reeves*, 530 U.S. at 148–49.

"A legitimate reason is pretextual if the improper motive, in this case a desire to violate Connecticut's public policy, was the real reason the plaintiff was terminated." *See Armetta*, 2016 WL 953212, at *7. Plaintiff may establish this "either directly by persuading the court that a[n] [illegal] reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Dister*, 859 F.2d at 1112 (quoting *Burdine*, 450 U.S. at 256); *see also Armetta*, 2016 WL 953212, at *7 (if the defendant "demonstrate[s] a permissible reason for the termination of employment," "[t]he burden then shifts back to the plaintiff to show that the employer's reason is 'pretextual or, *even if true*, the improper reason likely motivated the employer in the decision to terminate'" (emphasis added)). In order to defeat a summary judgment motion, "the plaintiff's admissible evidence must show circumstances that would be sufficient to permit a rational finder of fact to infer that the defendant's employment decision was more likely than not based in whole or in part" on an impermissible reason. *Feingold v. New York*, 366 F.3d 138, 152 (2d Cir. 2004).

Here, with respect to Defendant's proffered reason of Plaintiff's inadequate performance, Plaintiff has offered evidence of his track record of success at Flagstar and its failure to inform him informally about performance issues before instituting the PIP. Plaintiff has also pointed to the fact that he was discharged before the expiration of the PIP, even though Bristol and Metzger testified that Flagstar did not initially intend to terminate Plaintiff before completion of the PIP. This suggests that something other than Plaintiff's alleged performance issues was at play when Plaintiff was discharged. *See supra* note 8. Plaintiff also points to the temporal proximity of his

discharge to the submission of his rebuttal letter as further evidence of pretext. This evidence creates genuine issues of material fact about the reason for Plaintiff's discharge that a jury must decide.

Moreover, a reasonable jury could put weight in the inconsistency between Defendant's coding of Plaintiff's discharge as based on "Poor Job Performance" and Defendant's alternate contention that Plaintiff was part of a redundant layer of management. Shifting or inconsistent theories for a dismissal can be evidence of pretext. *See DeMoss v. Norwalk Bd. of Educ.*, 21 F. Supp. 3d 154, 169 (D. Conn. 2014) (noting that "pretext may be demonstrated either by reliance on the evidence comprising the *prima facie* case or by demonstrating such weaknesses, implausibilities, inconsistencies, incoherences, or contradictions in the employer's proffered legitimate reasons for its action"); *see also Dister*, 859 F.2d at 1113 ("a plaintiff may prevail at trial if, in addition to establishing a *prima facie* case, he persuades a reasonable jury that the reason advanced for his discharge—job elimination due to business priorities and organizational changes—was unworthy of credence"). Construing this evidence in the light most favorable to Plaintiff, as warranted at the summary judgment stage, it is sufficient to create a genuine issue of material fact as to the true reason for Plaintiff's discharge. A reasonable jury could find that Defendant's proffered reasons are pretextual. Thus, based on the record as a whole, there are genuine issues of material fact as to whether Plaintiff was discharged in violation of the public policy expressed in § 31-128e.

In sum, questions remain for the jury concerning the circumstances and reasons for Plaintiff's departure from Flagstar. The Court declines to grant summary judgment in favor of Defendant on Count One. Of course, Plaintiff retains the burden of persuasion and, in order to

succeed, he ultimately must persuade the jury that he was terminated and that such termination was wrongful under the law. *See Burdine*, 450 U.S. at 256.

### D. Whether Defendant Is Entitled to Summary Judgment on Count Two

#### 1. *Legal Standard*

"The availability of punitive damages on state claims in federal courts is generally governed by state law under *Erie*." *Buchwald v. Renco Grp.*, 539 B.R. 31, 53 (S.D.N.Y. 2015), *aff'd sub nom. In re Magnesium Corp. of Am.*, 682 F. App'x 24 (2d Cir. 2017). Under Connecticut law, "[p]unitive damages are a remedy awarded only when the evidence shows reckless, intentional or wanton violation of the rights of others." *Rose v. City of Waterbury*, No. 3:12CV291 VLB, 2013 WL 1187049, at *10 (D. Conn. Mar. 21, 2013). "A claim for punitive damages 'is not a separate count inasmuch as it is a remedy.'" *Id.* Therefore, "it is well established that 'a demand for punitive damages is not a freestanding claim; rather, it is parasitic and possesses no viability absent its attachment to a substantive cause of action.'" *Rendahl v. Peluso*, 173 Conn. App. 66, 100 (2017). As a result, in *Rose*, for example, the court dismissed the plaintiffs' count for punitive damages, but "note[d] that the Plaintiffs have sought the remedy of punitive damages in connection with their other claims." *Rose*, 2013 WL 1187049, at *10.

#### 2. *Discussion*

Count Two of the Amended Complaint is titled "Wrongful Termination; Punitive Damages." Am. Compl. at 6. Count Two consists of only two paragraphs. The first paragraph incorporates by reference the factual allegations of the Amended Complaint, without incorporating Count One. *Id.* ¶ 40. The second paragraph states that "Flagstar terminated Howard intentionally, willfully, and/or with reckless disregard to his rights." *Id.* ¶ 41. Plaintiff has argued that his punitive damages claim "flows from" his *Sheets* claim for common law wrongful discharge. *See*

ECF No. 33 at 3 ("The absence of a private right of action is exactly why Howard has filed this *Sheets* claim (Count One) and a punitive damages claim that flows from it (Count Two)."). At oral argument, Plaintiff conceded that Count Two simply seeks punitive damages as a remedy for the wrongs alleged in Count One.

Although Defendant does not raise the issue in its briefing, Plaintiff's attempt to assert a standalone count for punitive damages is improper. Where a plaintiff has asserted a claim under a private cause of action that does not exist, the Court may dismiss the claim *sua sponte*. *See Fitzgibbons v. City of Oswego*, No. 5:10-CV-1038 FJS/ATB, 2011 WL 6218208, at *13 (N.D.N.Y. Dec. 13, 2011) ("[T]he Court *sua sponte* dismisses this cause of action . . . because the weight of authority in New York supports a determination that no such private cause of action exists."); *see also Bronx Gate & Grille v. Deleon*, No. 07 CV 4411 RJD (JO), 2008 WL 5069533, at *3 (E.D.N.Y. Nov. 24, 2008) (discussing the court's "independent obligation to ensure that . . . allegations suffice to state a claim" and dismissing a cause of action *sua sponte*). Because no independent cause of action for punitive damages exists under Connecticut law, the Court dismisses Count Two *sua sponte* to the extent it represents a standalone claim.

However, the dismissal of Count Two as a standalone claim does not preclude Plaintiff from seeking punitive damages with respect to Count One. In his prayer for relief, Plaintiff seeks "[p]unitive damages for the defendant's intentional, willful and/or recklessly indifferent conduct." Am. Compl. at 7. "Punitive damages are awarded when the evidence shows a reckless indifference to the rights of others or an intentional and wanton violation of those rights." *Avery v. Medina*, 151 Conn. App. 433, 449 (2014). "Whether the defendant acted recklessly is a question of fact . . . ." *Id.* at 450. Thus, the questions of whether Defendant terminated Plaintiff with reckless indifference to his rights or in a way that constituted an intentional and wanton violation of those

rights and whether Plaintiff is entitled to punitive damages, are matters the jury may decide if it finds for Plaintiff on Count One. *See Stohlts v. Gilkinson*, 87 Conn. App. 634, 648 (2005) ("Punitive damages do not need to be alleged explicitly in the complaint or included in the claims for relief as long as the pleadings give the defendant sufficient notice that he is being charged with aggravated conduct rather than mere negligence.").

IV.     **CONCLUSION**

For the reasons discussed herein, Defendant's motion for summary judgment is DENIED with respect to Count One. Count Two is DISMISSED *sua sponte* to the extent it represents a standalone count for punitive damages. However, Plaintiff is entitled to seek punitive damages as a remedy for the common law wrongful discharge claim alleged in Count One. The Court will convene a conference with the parties to set a trial date.


**SO ORDERED** at Hartford, Connecticut, this 20th day of April, 2022.


 */s/ Sarala V. Nagala*
SARALA V. NAGALA
UNITED STATES DISTRICT JUDGE
